United States Court of Appeals
Fifth Circuit

**F I L E D**

February 12, 2007

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 05-41876

UNITED STATES OF AMERICA,

Plaintiff-Appellee

VERSUS

RICARDO GUAJARDO,

Defendant-Appellant

Appeal from the United States District Court For the Southern
District of Texas, Brownsville Division
1:04-CR-00959

Before DAVIS and STEWART, Circuit Judges, and GODBEY, District Judge.[1]

PER CURIAM[2]

Defendant-Appellant Ricardo Guajardo ("Guajardo") challenges

his sentence following his guilty plea to possessing less than 50

kilograms of marijuana with intent to distribute in violation of 21

---

[1]District Judge of the Northern District of Texas, sitting
by designation.

[2]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

U.S.C. § 841(a)(1) and (b)(1)(D), and 18 U.S.C. § 2. Guajardo argues the district court erred in: (1) increasing his criminal history score by one point for a prior Texas misdemeanor conviction for displaying a counterfeit inspection sticker; and (2) failing to articulate any application of the 18 U.S.C. § 3553(a) sentencing factors. For the reasons set forth below, we AFFIRM.

## I. Prior Misdemeanor Conviction

Prior to the instant offense, Guajardo had a number of convictions including a Texas misdemeanor conviction for displaying a counterfeit inspection sticker.[3] The Texas Penal Code provided for punishment of a fine up to $2,000 or up to 180 days of jail, or both. Guajardo was sentenced to two days in jail and fined $500.

The district court added one point to Guajardo's criminal history score for this offense. As a result, Guajardo received a total of 10 criminal history points, placing him in Criminal History Category V. Combined with an offense level of 17, this gave Guajardo a sentencing range of 46 to 57 months. Guajardo was sentenced to the minimum penalty. If the point had not been added, Guajardo's 9 point criminal history would have fallen into Criminal History Category IV with a resultant range of punishment of 37 to 46 months in prison.

As he did before the district court, Guajardo argues that

---

[3]The details of the prior conviction were not available. The District Court requested the court records, but they have not been received.

pursuant to U.S.S.G. § 4A1.2(c)(1) he should not receive a criminal history point for this prior misdemeanor conviction because it is "similar" to the listed excludable offense of driving without a license or with a revoked or suspended license.[4]  We review the district court's interpretation of the Guidelines de novo.[5]

Generally, sentences for misdemeanor offenses are counted in the calculation of a defendant's criminal history score.[6]  However, certain offenses or offenses similar to them are excluded unless the sentence was a term of probation of at least one year or a term of imprisonment of at least 30 days, or the prior offense is similar to the current offense.[7]  In addition, certain other offenses are always excluded.[8]

The offense of driving without a license or with a revoked or suspended license is among the excludable offenses listed in § 4A1.2(c)(1); displaying a counterfeit inspection sticker is not listed.  Guajardo was sentenced to only two days in jail, and displaying a counterfeit inspection sticker is not similar to the

---

[4]Guajardo does not renew the other ground upon which he objected to the additional history point in the district court, i.e., that the conviction is only a "minor traffic infraction," and that argument is therefore waived.  See United States v. Searcy, 316 F.3d 550, 551 n.* (5th Cir. 2002).

[5]United States v. Reyes-Maya, 305 F.3d 362, 366 (5th Cir. 2002).

[6]U.S.S.G. § 4A1.2(c).

[7]U.S.S.G. § 4A1.2(c)(1).

[8]U.S.S.G. § 4A1.2(c)(2).

3

instant offense. Therefore, if displaying a counterfeit inspection sticker is similar to driving without a license or with a revoked or suspended license, it should not be counted in Guajardo's criminal history.

In United States v. Hardeman,[9] we explained how to determine whether a prior offense is "similar" to one of the exempted offenses in § 4A1.2(c)(1). We suggested a "common sense approach which relies on all possible factors of similarity."[10] Factors to consider include: "a comparison of punishments imposed for listed and unlisted offenses, the seriousness of the offense as indicated by the level of punishment, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct."[11] None of these factors are accorded dispositive weight, and "each offense-similarity comparison is fact specific."[12] We "look to the definition of the equivalent offense under the relevant State's law."[13]

Our analysis begins with a comparison of the punishments given in the Texas statutes for displaying a counterfeit inspection

---

[9] 933 F.2d 278 (5th Cir. 1991).

[10] Id. at 281.

[11] Id.

[12] United States v. Lamm, 392 F.3d 130, 132 (5th Cir. 2004) (internal citation omitted) (emphasis in original).

[13] Id.

4

sticker,[14] and driving without a license or with a revoked or suspended license,[15] as they were at the time of conviction. In Texas, a conviction for displaying a counterfeit inspection sticker is a class B misdemeanor punishable by a fine up to $2,000 _or_ up to 180 days jail term, or both. An offense for driving without a license or with a revoked or suspended license carries a fine of $100 to $500 _and_ a prison term of not less than 72 hours or more than six months. Based on this type of comparison, the offense of displaying a counterfeit inspection sticker can be less serious than the offense of driving without a license or with a revoked or suspended license.[16]

The actual punishment given is also a proxy for the perceived severity of the crime.[17] Guajardo's sentence of two days in jail and a $500 fine indicate that the offense should not be included in his criminal history score.[18]

However, the fact that these offenses carry similar penalties does not mean that the offense of displaying a counterfeit inspection sticker should be excluded from the criminal history

---

[14]Tex. Penal Code Ann. § 12.22.

[15]Tex. Transp. Code Ann. § 521.457(e).

[16]See _Hardeman_, 933 F.2d at 282.

[17]_Id._

[18]See _id_ (sentence of one day in jail and $250 fine indicate that the offense should not be included in criminal history score).

5

calculation.[19]  "The other factors involved may indicate that the defendant's prior offense should be included."[20]

When comparing the elements of the offenses, we conclude that displaying a counterfeit inspection sticker is categorically more serious than driving without a license or with a revoked or suspended license.  In Hardeman, we compared the driving-without-a-license offense with Hardeman's misdemeanor offense for "failure to maintain financial responsibility," i.e., failing to maintain auto insurance.[21]  We noted that the offense of failing to maintain financial responsibility is "similar to other listed offenses which involve regulations that must be complied with if one is to drive an automobile."[22]  In concluding that Hardeman's misdemeanor offense should have been excluded from the calculation of his criminal history score, we rejected the Government's argument that the offenses were different because Hardeman's failure-to maintain-financial-responsibility offense "contained an element of indifference toward society."[23]  We determined that "this element . . . does not distinguish this offense from the other listed

_____

[19]See id.

[20]Hardeman, 933 F.2d at 282.

[21]Id. at 279-83.

[22]Id. at 282.

[23]Id.

6

offenses."[24]

The instant case is distinguishable from <u>Hardeman</u>.  Although the offense of displaying a counterfeit inspection sticker involves a regulation "that must be complied with if one is to drive an automobile," in overruling Guajardo's objection, the district court stated that "this is counterfeiting a document required by the state, and I think that's more akin to fraud or forgery."  This difference was not at issue in <u>Hardeman</u>.

In <u>United States v. Caputo</u>,[25] the Seventh Circuit addressed the issue of whether using a false driver's license is similar to, <u>inter alia</u>, driving without a license or with a revoked or suspended license.  In concluding that the offenses were not similar, the court cited "[t]he old distinction between misfeasance and nonfeasance," reasoning that a

> driver who fails to obtain a driver's license, or who continues driving after his license has been revoked or suspended or has expired, is guilty of failing to expend resources . . . of time and money that the state requires him to expend as a condition of being permitted to drive. His is a wrongful <u>inactivity</u>, but often it is the wrongfulness of irresponsibility rather than of calculation.  The driver who expends resources to obtain forged or otherwise fraudulent documentation to enable him to drive crosses the line from inactivity to <u>activity</u> and by doing so reveals himself to be a person willing to incur expense to commit a crime, presumably in anticipation of compensating profit.[26]

---

[24]<u>Hardeman</u>, 933 F.2d at 282.

[25]978 F.2d 972 (7th Cir. 1992).

[26]<u>Id.</u> at 977-78 (emphasis added).

7

We find this reasoning persuasive. Like using a false driver's license, a person who commits the offense of displaying a counterfeit inspection sticker engages in wrongful <u>activity</u> because he has expended resources to obtain "an inspection certificate . . . knowing that the certificate . . . is counterfeit."[27] This is what distinguishes the instant case from <u>Hardeman</u>. Unlike displaying a counterfeit inspection sticker, the failure to maintain auto insurance involves wrongful <u>inactivity</u> on the part of the driver who is guilty of failing to expend resources to obtain proper auto insurance coverage.

The discussion of the previous factors sheds light on the remaining issues concerning both culpability and recurring criminal conduct. Displaying a counterfeit inspection sticker is suggestive of both a greater degree of culpability and increased likelihood of future criminal conduct than driving without a license or with a revoked or suspended license standing alone. A defendant who is willing to expend resources to obtain a counterfeit inspection sticker suggests "a more calculating, a more resourceful, and a more dangerous criminal."[28]

The "seriousness of the offense is one indication of whether

---

[27]<u>See</u> Tex. Transp. Code Ann. § 548.603. "Counterfeit" is defined as "an imitation of a document that is printed, engraved, copied, photographed, forged, or manufactured by a person not authorized to take that action . . ." Tex. Transp. Code Ann. § 548.603(e).

[28]<u>See</u> <u>Caputo</u>, 978 F.2d at 978.

8

the offense has any predictive capacity for future criminality."[29] As shown above, displaying a counterfeit inspection sticker is more serious than driving without a license or with a revoked or suspended license.  In addition, a person who has no driver's license or a revoked or suspended license, will likely be apprehended the first time he is stopped by a policeman.[30]  However, a person who displays a counterfeit inspection sticker may not be apprehended immediately, if at all, due to the potential difficulty in identifying a counterfeit inspection sticker.[31]  As a result, a defendant who is able to obtain a counterfeit inspection sticker without being apprehended, may be more likely to repeat his illegal behavior.

In sum, weighing all the <u>Hardeman</u> factors, under the requisite common sense and fact specific approach, Guajardo's offense for displaying a counterfeit inspection sticker is not similar to the offense of driving without a license or with a revoked or suspended license.  Therefore, the district court did not err in including the prior misdemeanor offense of displaying a counterfeit inspection sticker in Guajardo's criminal history score.

---

[29]See <u>Hardeman</u>, 933 F.2d at 283.

[30]See <u>Caputo</u>, 978 F.2d at 978.

[31]See <u>Lamm</u>, 392 F.3d at 135 ("[T]he identity and account information of the person issuing the [insufficient funds] check is known, whereas the perpetrator of petty theft is more difficult to apprehend.").

II.  Failure to Articulate § 3553(a) Factors

In the district court, Guajardo moved for a downward departure on the ground that he had been treated for and suffered from Schizo affective Disorder (Depressive type), and has exhibited "significant cognitive disorganization, heard voices, has had hallucinations, been depressed, and has had suicidal thoughts." Guajardo argues that the district court erred in denying his downward-departure motion because it failed to articulate any application of the 18 U.S.C. § 3553(a) factors in imposing his sentence, purportedly required by United States v. Booker.[32]

Under the discretionary sentencing system established by Booker, district courts retain a duty to consider the Sentencing Guidelines, along with the sentencing factors set forth in 18 U.S.C. § 3553(a).[33]  We review the sentence imposed by the district court for reasonableness in light of the factors set forth in 18 U.S.C. § 3553(a).[34]  A post-Booker discretionary sentence within a properly calculated Guideline range is presumptively reasonable.[35]

_____

[32]543 U.S. 220 (2005). To the extent that Guajardo argues that § 3553(a) itself requires a district court to explicitly consider the § 3553(a) factors, Guajardo cites no legal authority that requires such consideration and we are aware of none.

[33]See United States v. Mares, 402 F.3d 511, 518-19 (5th Cir. 2005).

[34]Id.

[35]United States v. Alonzo, 435 F.3d 551, 554 (5th Cir. 2006).

10

If the district court imposes a sentence within a properly calculated Guideline range, we "will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines."[36] In such cases, "it will be rare for a reviewing court to say such a sentence is 'unreasonable,'" and "we will give great deference to that sentence."[37] In addition, when imposing a properly calculated Guidelines sentence, "little explanation is required."[38]

In Guajardo's case, the sentence imposed was at the bottom of the applicable Guideline range. In sentencing Guajardo, the district court adopted the factual findings and Guidelines applications in the Pre-sentence Report ("PSR"). Although the district court offered no independent reasons for the sentence imposed and made no reference to the factors in 18 U.S.C. § 3553(a), we will infer that the district court considered the § 3553(a) factors in sentencing Guajardo.

Guajardo does not assert that his sentence is unreasonable, only that the reasons do not resonate from the record. As a result, Guajardo has failed to demonstrate that his properly calculated Guidelines sentence, which was at the lowest end of the range, was unreasonable. Because Guajardo has offered nothing to

---

[36]Mares, 402 F.3d at 519.

[37]Alonzo, 435 F.3d at 554.

[38]Mares, 402 F.3d at 519.

11

rebut the presumption of reasonableness, he is not entitled to relief.

III.  <u>Constitutionality of 21 U.S.C. § 841(a) and (b)</u>

Guajardo next argues that 21 U.S.C. § 841(a) and (b) is unconstitutional under <u>Apprendi v. New Jersey</u>.[39]  Guajardo acknowledges that his argument is foreclosed by our decision in <u>United States v. Slaughter</u>,[40] but seeks to preserve the issue for Supreme Court review in light of the decision in <u>Apprendi</u>.[41]

In <u>Slaughter</u>, we specifically rejected the claim that 21 U.S.C. § 841(a) and (b) is unconstitutional on its face according to <u>Apprendi</u>.[42]  Guajardo's contention is therefore rejected.

IV.

For the foregoing reasons, Guajardo's sentence is AFFIRMED.

---

[39]530 U.S. 466 (2000).

[40]238 F.3d 580 (5th Cir. 2000).

[41]See <u>Bousley v. United States</u>, 523 U.S. 614, 622-23 (1998) (noting that the futility of an argument at the time it should have been made is not "cause" for defaulting claim).

[42]<u>Slaughter</u>, 238 F.3d at 582 ("We see nothing in the Supreme Court decision in <u>Apprendi</u> which would permit us to conclude that 21 U.S.C. §§ 841(a) and (b), 846, and 860(a) are unconstitutional on their face.").