# United States Court of Appeals
## For the First Circuit

No. 17-1664

UNITED STATES OF AMERICA,

Appellee,

v.

DALE PINKHAM, SR.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon Levy, U.S. District Judge]

Before

Lynch, Selya and Thompson,
Circuit Judges.

Lenore Glaser and Law Office of Lenore Glaser on brief for appellant.
Halsey B. Frank, United States Attorney, and Benjamin M. Block, Assistant United States Attorney, on brief for appellee.

July 18, 2018

**SELYA**, **Circuit Judge**.  Defendant-appellant Dale Pinkham, Sr., challenges his 240-month incarcerative sentence.  He strives to convince us that the district court held him responsible for an incorrect drug quantity and, in the bargain, improperly counted two prior convictions when calculating his criminal history score.  We are not persuaded by either argument and, therefore, summarily affirm his sentence.

## I. BACKGROUND

Because this appeal follows the appellant's guilty plea, we draw the facts from the change-of-plea colloquy, the uncontested portions of the presentence investigation report (PSI Report), and the record of the disposition hearing.  See United States v. Fields, 858 F.3d 24, 27 (1st Cir. 2017); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).

The conviction and sentence sub judice stem from the appellant's operation of what might be termed a family business: a drug-trafficking conspiracy that involved his sons (Robert, Raymond, and Dale, Jr.) and his romantic partner of 30 years (Louise Cook).  Beginning around 2012, the appellant ran this conspiracy from his home in Gorham, Maine.  During its embryonic stages, the appellant typically obtained 10 to 20 grams of heroin once every two months from a Boston-based supplier.  Over time the conspiracy matured, with the result that the appellant's purchases increased in frequency, eventually becoming monthly occurrences.

- 2 -

The amounts of heroin handled by the conspiracy escalated as well, rising to roughly 200 to 400 grams per month.

Even apart from promoting drug use, the appellant's criminal activities had a deleterious effect on the community in which he lived. He encouraged his customers to commit burglaries and bring him items that he prized. In this way, the appellant amassed stockpiles of firearms, jewelry, tools, and electronic gadgets.

These chickens ultimately came home to roost. On July 22, 2015, a federal grand jury sitting in the District of Maine returned an indictment charging the appellant with a laundry list of crimes. While the appellant was being held in pretrial detention, he reached out to family members, soliciting them to threaten potential witnesses.

In due season, the grand jury returned a superseding indictment, which charged the appellant in 13 separate counts. Of particular pertinence for present purposes, the superseding indictment charged him with conspiracy to distribute heroin, see 21 U.S.C. §§ 841(a)(1), 846 (count one); conspiracy to possess stolen firearms, see 18 U.S.C. §§ 371, 922(j) (count four); and attempted witness tampering, see id. § 1512(a)(2) (count twelve). The appellant initially maintained his innocence. On September 6, 2016, however, he reversed his course and entered a guilty plea, pursuant to a plea agreement, to counts one, four, and twelve.

The government agreed to dismiss the remaining 10 counts at sentencing.

The PSI Report recommended that the appellant be held responsible for 3.23 kilograms of heroin, which corresponded to a base offense level of 32. See USSG §2D1.1(c)(4) (Drug Quantity Table). Notwithstanding the appellant's protest that this figure represented a "significant overestimate of the drug quantity involved," the district court adopted the drug-quantity calculation and — after making other adjustments not challenged here — set the appellant's total offense level at 39. The court also adopted the PSI Report's recommended criminal history score of six and placed the appellant in criminal history category III. Although these determinations yielded a guideline sentencing range of 324 to 405 months, the court weighed the factors limned in 18 U.S.C. § 3553(a) and concluded that a below-the-range incarcerative sentence of 240 months was sufficient to achieve the purposes of sentencing. The court imposed such a downwardly variant sentence, and this timely appeal followed.

## II. ANALYSIS

As a general matter, we review challenges to a sentence for abuse of discretion. See Gall v. United States, 552 U.S. 38, 51 (2007); United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). This process "is characterized by a frank recognition of the substantial discretion vested in a sentencing court." United

States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013). If, however, a particular claim of error is raised for the first time on appeal, review is normally limited to the incidence of plain error. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001); see also Fed. R. Crim. P. 52(b). "The plain error hurdle is high." United States v. Hunnewell, 891 F.2d 955, 956 (1st Cir. 1989). Where the plain error standard applies, an appellant must demonstrate "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Duarte, 246 F.3d at 60; see Rosales-Mireles v. United States, 138 S. Ct. 1897, 1904-05 (2018). A party who claims plain error must carry the devoir of persuasion as to all four of these elements. See United States v. Bramley, 847 F.3d 1, 5 (1st Cir. 2017); United States v. Vega Molina, 407 F.3d 511, 521 (1st Cir. 2005).

Against this backdrop, we turn to the appellant's twin claims of sentencing error. We discuss them sequentially.

## A. Drug Quantity.

To begin, the appellant challenges the drug quantity for which he was held accountable. In confronting this challenge, we are mindful that, in drug-trafficking cases, "a key datum in constructing the defendant's sentence is the quantity of narcotics attributable to him for sentencing purposes, a datum initially

- 5 -

bounded by the sum of the charged conduct to which the defendant pleads plus his relevant uncharged conduct." United States v. Santos, 357 F.3d 136, 140 (1st Cir. 2004) (quoting United States v. Bradley, 917 F.2d 601, 604 (1st Cir. 1990)). The sentencing court must derive the relevant drug quantity "from all acts 'that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" Id. (quoting USSG §1B1.3(a)(2)). The "essential inquiry" is not limited to what the defendant actually knew but, rather, extends to "what acts were reasonably foreseeable by him." Id.; see United States v. Colón-Solís, 354 F.3d 101, 103 (1st Cir. 2004). In a drug-conspiracy case, this means that "each co-conspirator is responsible not only for the drugs he actually handled but also for the full amount of drugs that he could reasonably have anticipated would be within the ambit of the conspiracy." United States v. Rivera-Rodríguez, 617 F.3d 581, 607 (1st Cir. 2010) (quoting United States v. Rodriguez, 525 F.3d 85, 107 (1st Cir. 2008)); see USSG §1B1.3(a)(1)(B).

At sentencing, the appellant argued that the court was using an incorrect calculation of the amount of drugs handled by the conspiracy. On appeal, the appellant makes the same bottom-line argument, but he has shifted theories. Represented by new counsel, he no longer posits that the district court committed an arithmetical error. Instead, he argues that the court erred as a

- 6 -

matter of law in including in its calculation drugs that he personally consumed.

Hopscotching from one theory to another theory has consequences. "A criminal defendant, dissatisfied with the district court's rulings at sentencing yet persuaded that his original arguments lacked merit, cannot switch horses mid-stream in hopes of locating a swifter steed" and expect that his new theory will be treated as a preserved claim of error. Dietz, 950 F.2d at 55. Under such circumstances, the new theory is treated as an unpreserved claim of error, see id. at 54-55; Clauson v. Smith, 823 F.2d 660, 666 (1st Cir. 1987); and although preserved claims of legal error are reviewed de novo,[1] see United States v. McCormick, 773 F.3d 357, 359 (1st Cir. 2014), forfeited claims are reviewed only for plain error, see Puckett v. United States, 556 U.S. 129, 134-35 (2009). Here, as in Dietz, 950 F.2d at 55, the appellant makes a "neoteric argument[]" that "bear[s] no substantial relation" to his original argument. Our review, therefore, is limited to plain error.

---

[1] At sentencing, de novo review of preserved claims of legal error is not inconsistent with the general precept that claims of sentencing error are reviewed for abuse of discretion. See Gall, 552 U.S. at 51; Martin, 520 F.3d at 92. After all, a material error of law is always an abuse of discretion. See United States v. Sepúlveda-Hernández, 752 F.3d 22, 33 (1st Cir. 2014); United States v. Snyder, 136 F.3d 65, 67 (1st Cir. 1998).

- 7 -

Plain error is plainly absent. It is settled law in this circuit that when a defendant participates in a drug-trafficking conspiracy, his "purchases for personal use are relevant in determining the quantity of drugs that [he] knew were distributed by the conspiracy." United States v. Demers, 842 F.3d 8, 13 (1st Cir. 2016) (quoting United States v. Innamorati, 996 F.2d 456, 492 (1st Cir. 1993)). Because the appellant took part in such a conspiracy — indeed, he was its ringleader — whatever drugs he himself consumed were properly included in his drug-quantity tabulation.

In the last analysis, the appellant's argument derives from his failure to appreciate the important distinction between conspiracy cases and certain other drug cases. Some of our sister circuits have ruled that drugs obtained for personal consumption should be excluded from the drug-quantity calculus when the defendant is accused only of possession with intent to distribute. See, e.g., United States v. Gill, 348 F.3d 147, 153 (6th Cir. 2003); United States v. Williams, 247 F.3d 353, 358 (2d Cir. 2001); United States v. Wyss, 147 F.3d 631, 632 (7th Cir. 1998). Such cases rely on the distinction between possession with intent to distribute and conspiracy. When a defendant is charged with the former crime, the government must establish "that a defendant possessed the drugs for distribution rather than for personal use." United States v. Polanco, 634 F.3d 39, 43 (1st Cir. 2011). In the

absence of a conspiracy, then, "the act of setting aside narcotics for personal consumption" may reasonably be regarded as "<u>exclusive</u> of any plan to distribute them." <u>Williams</u>, 247 F.3d at 358 (emphasis in original). By contrast, courts recognize that, in conspiracy cases, drug quantity should not be reduced to account for a defendant's personal drug use. <u>See</u> <u>id.</u>; <u>Wyss</u>, 147 F.3d at 632.

In a variation on this theme, the appellant also argues that the rule of lenity requires that we discount the drugs he personally consumed. We think not. In its classic formulation, the rule of lenity applies when "reasonable doubt persists about a statute's intended scope even <u>after</u> resort to 'the language and structure, legislative history, and motivating policies' of the statute." <u>Moskal</u> v. <u>United States</u>, 498 U.S. 103, 108 (1990) (emphasis in original) (quoting <u>Bifulco</u> v. <u>United States</u>, 447 U.S. 381, 387 (1980)); <u>see</u> <u>United States</u> v. <u>Stepanian</u>, 570 F.3d 51, 57 (1st Cir. 2009).

We have indicated, however, that the rule of lenity is not limited to instances of statutory ambiguity. The rule may also apply in the context of the sentencing guidelines. Thus, "[w]e have looked with favor on the application of this rule to a sentencing guideline when 'substantial ambiguity as to the guideline's meaning persists even after a court looks to its text, structure, context, and purposes.'" <u>United States</u> v. <u>Suárez-</u>

González, 760 F.3d 96, 101 (1st Cir. 2014) (quoting United States v. Damon 595 F.3d 395, 401 (1st Cir. 2010)); see United States v. Bowen, 127 F.3d 9, 14 (1st Cir. 1997).

The case at hand does not come within these contours. For the reasons already explained, the guidelines clearly support inclusion of a defendant's purchase of drugs for personal consumption in a conspiracy case. Consequently, the rule of lenity does nothing to improve the appellant's position here.

That ends this aspect of the matter. We hold that the appellant's newly emergent drug-quantity claim is futile.

## B. Criminal History Score.

This brings us to the appellant's claim that the sentencing court miscalculated his criminal history score, thus boosting him into the wrong criminal history category (CHC). To lend perspective, we start with some general comments about the computation and effect of a defendant's criminal history score. A defendant's guideline sentencing range is a product of two integers: his total offense level and his CHC. See United States v. Serrano-Mercado, 784 F.3d 838, 840 (1st Cir. 2015); United States v. Emery, 991 F.2d 907, 909 (1st Cir. 1993). The CHC, in turn, is derived from a defendant's criminal history score. See United States v. Sanchez, 354 F.3d 70, 81 (1st Cir. 2004). For instance, a defendant who has a criminal history score of four, five, or six falls into CHC III, whereas a defendant who has a

criminal history score of two or three falls into CHC II.  See USSG Ch. 5, Pt. A (Sentencing Table).  The lower a defendant's CHC, the lower his guideline sentencing range ordinarily will be. See id.; see also Serrano-Mercado, 784 F.3d at 840.

Although prior convictions normally count toward a defendant's criminal history score, the guidelines exempt some misdemeanors and petty offenses from this computation.  See USSG §4A1.2(c); see also United States v. Maldonado, 614 F.3d 14, 16 (1st Cir. 2010).  Attempting to invoke such an exemption, the appellant cites USSG §4A1.2(c)(2), which excludes from a defendant's criminal history score sentences for certain enumerated offenses (and offenses similar to them).  This litany includes "minor traffic infractions (e.g., speeding)."  USSG §4A1.2(c)(2).

The appellant's claim that the sentencing court erred in compiling his criminal history score has two sub-parts.  Each sub-part focuses on a different prior conviction:  the first sub-part relates to a 2003 conviction for driving without a valid driver's license.  See Fla. Stat. § 322.03(1).  When constructing the appellant's criminal history score, the district court treated this conviction as similar to an offense enumerated in section 4A1.2(c)(1):  "[d]riving without a license or with a revoked or suspended license."  Noting that the appellant had received a 60-day jail sentence for driving without a valid driver's license

and concluding that the conditions for exemption under section 4A1.2(c)(1) were therefore not met,[2] the court assigned two criminal history points to this conviction.

The appellant assigns error, contending that the district court should have excluded this conviction from his criminal history score pursuant to section 4A1.2(c)(2) because it was similar to a minor traffic infraction, such as speeding. Since this contention is raised for the first time on appeal, our review is for plain error. See Duarte, 246 F.3d at 60. We discern none.

In sorting out whether a subsection of section 4A1.2(c) applies, an inquiring court must focus on factors such as "a comparison of punishments imposed for the listed and unlisted offenses," "the perceived seriousness of the offense as indicated by the level of punishment," "the elements of the offense," "the level of culpability involved," and "the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct." USSG §4A1.2, cmt. n.12(A). The defendant bears

---

[2] Under USSG §4A1.2(c)(1), a prior conviction is excluded from a defendant's criminal history score if three conditions are met: (1) the sentence imposed for the prior conviction was for one year's probation or less and/or less than 30 days' imprisonment; (2) the prior conviction was for an offense that is dissimilar to the offense for which the defendant is currently being prosecuted; and (3) the prior conviction was for an offense that is either enumerated in section 4A1.2(c)(1) or is similar to such an offense. See Maldonado, 614 F.3d at 16.

the burden of establishing that an exemption pertains.  See United States v. Garcia-Sandobal, 703 F.3d 1278, 1284 (11th Cir. 2013).

Under Florida law, driving without a valid license is generally considered comparable to driving while one's license is suspended, revoked, canceled, or disqualified.  See Roedel v. State, 773 So. 2d 1280, 1281 (Fla. Dist. Ct. App. 2000) (noting similarity).  All of these offenses are misdemeanors of the second degree, which are punishable by a jail sentence of up to sixty days and/or a fine of up to $500.  See Fla. Stat. §§ 322.03(1), 322.34(2), 322.39(2), 775.082(4)(b), 775.083(1)(e).  Seen in this light, the district court's selection of driving with a suspended, revoked, canceled, or disqualified license as the most appropriate analog to driving without a valid license appears eminently reasonable.  Conversely, the appellant's suggested comparator — speeding — appears to be dissimilar in important respects; that offense is treated as a "noncriminal traffic infraction," and is punishable only by a fine of up to $500.  Id. §§ 316.183(7), 775.082(5), 775.083(1)(e).  Although the commentary to section 4A1.2(c) directs us to look beyond the statutory elements and to consider the underlying facts of a defendant's prior conviction, see USSG §4A1.2, cmt. n.12(A); see also Maldonado, 614 F.3d at 18-19, the appellant has failed to point to anything in the state-court record that would blunt the force of the district court's comparison — and it is his burden to do so, see Garcia-Sandobal,

703 F.3d at 1284; cf. United States v. Gray, 177 F.3d 86, 90 (1st Cir. 1999) ("Because a defendant stands in the best position to offer a first-hand account of the details of his own past legal proceedings, his silence can be deafening."). The known facts militate against the appellant's comparison; he was given a statutory maximum sentence of sixty days, which undermines the appellant's efforts to downplay the severity of his past offense.

In a last-ditch effort to tip the balance, the appellant conclusorily suggests that the rule of lenity counsels in favor of his interpretation. Given the plain language of the relevant Florida statutes, though, the appellant has wholly failed to sow any reasonable degree of doubt regarding their import. See Moskal, 498 U.S. at 108. It follows that the rule of lenity is of no solace to him.

Nothing more need be said. The short of it is that no error, plain or otherwise, mars the inclusion of two points for the appellant's conviction for driving without a valid driver's license in his criminal history score.

The second sub-part of the appellant's attack on his criminal history score relates to the district court's inclusion of one criminal history point for his 2008 Florida conviction for failing to send his child to school. See Fla. Stat. § 1003.27(2). He argues that this conviction comes within the sweep of section 4A1.2(c)(2), which instructs that "juvenile status offenses and

truancy" are "never counted" toward a defendant's criminal history score.

Here, however, the appellant's claim does not even get out of the starting gate. In his brief, the appellant provides only a cursory reference to guideline commentary,[3] without making even the slightest effort to explain its relevance. He cites no other authority and musters nothing that even remotely resembles a developed argument. Such bare terrain is familiar territory.

We have stated, time and time again, that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Since the appellant has mentioned his truancy-related argument in only "the most skeletal way," without any coherent structure or substance, we deem his argument abandoned. Id.; see Rodríguez v. Mun'y of San Juan, 659 F.3d 168, 175-76 (1st Cir. 2011); United States v. DeCologero, 530 F.3d 36, 60 (1st Cir. 2008).

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the appellant's sentence is summarily

**Affirmed**. See 1st Cir. R. 27.0(c).

---

[3] The appellant refers to USSG §4A1.1, cmt. n.3. This comment deals in part with sentences committed before a defendant's 18th birthday. See id. Since the appellant was well over the age of 18 when he committed the offense of failing to send a child to school, any relevance that the commentary may have is a mystery.