[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12196

_____

D.C. Docket No. 8:10-cr-00502-SDM-EAJ-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ERICK GARCIA-SANDOBAL,
a.k.a. Erik Garcia,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 3, 2013)

Before O'CONNOR,[*] Associate Justice Retired, and MARCUS and PRYOR,
Circuit Judges.

PRYOR, Circuit Judge:

---

[*] Honorable Sandra Day O'Connor, Associate Justice (Retired) of the United States
Supreme Court, sitting by designation.

This appeal presents three issues arising from the guilty plea and prison sentence of Erick Garcia-Sandobal for unlawful reentry to the United States, 8 U.S.C. § 1326. First, Garcia-Sandobal contends that the district court erred when it accepted his guilty plea and enhanced his sentence for having been removed following a conviction for an aggravated felony. See id. § 1326(b)(2). Second, Garcia-Sandobal contends that the district court erred when it increased his offense level under the Sentencing Guidelines for having been convicted of a "crime of violence" before his removal. See United States Sentencing Guidelines Manual § 2L1.2(b)(1)(A)(ii) (Nov. 2010). Third, Garcia-Sandobal contends that the district court erred when it increased his criminal history score by counting a prior conviction for disorderly intoxication, Fla. Stat. § 856.011. See U.S.S.G. § 4A1.2(c)(1). Garcia-Sandobal waived his first argument when he pleaded guilty; a prior panel precedent, United States v. Romo-Villalobos, 674 F.3d 1246 (11th Cir. 2012), forecloses his second argument; and his third argument fails because his conviction is more similar to a conviction for disorderly conduct than to a conviction for public intoxication. We affirm.

## I. BACKGROUND

Garcia-Sandobal, a citizen of Honduras, illegally entered the United States in 1993. Between 1993 and 1998, Florida convicted Garcia-Sandobal of several crimes including battery, domestic violence battery, battery of a law enforcement

2

officer, obstructing or opposing an officer with violence, and obstructing or opposing an officer without violence. In 1996, a Florida court convicted Garcia-Sandobal of two counts of battery of a law enforcement officer and one count of obstructing or opposing an officer with violence. For these three convictions, the Florida court sentenced Garcia-Sandobal to two years of probation, but the Florida court later revoked his probation and sentenced him to two years of imprisonment. See Garcia v. State, 701 So. 2d 607, 608 (Fla. Dist. Ct. App. 1997). An appellate court later revoked the prison sentence and reinstated the term of probation. Id. at 608–09.

After an immigration judge ordered Garcia-Sandobal's removal from the United States, the government removed him to Honduras in March 1998, but Garcia-Sandobal's absence from our shores and our criminal justice system was brief. He unlawfully reentered the United States, and between 2000 and 2010, Florida convicted Garcia-Sandobal of several crimes, including battery, aggravated assault, lewd or lascivious molestation of a child under 12 years of age, marijuana possession, disorderly intoxication, providing a false name to law enforcement officials, driving with an expired tag, and failure to appear in court. The conviction for disorderly intoxication occurred in 2009, and a Florida court sentenced Garcia-Sandobal to serve 50 days in jail followed by 12 months of

3

probation. After he violated the terms of his probation, the Florida court revoked his probation and sentenced him to an additional 60 days in jail.

In October 2010, a federal grand jury indicted Garcia-Sandobal on one count of unlawfully being found in the United States after having been previously removed, 8 U.S.C. § 1326(a), (b)(2). Section 1326(a) makes it a crime for an alien previously removed to reenter the United States without the permission of the Attorney General of the United States and provides for a maximum sentence of two years of imprisonment. Id. § 1326(a). Section 1326(b) provides for longer prison sentences under certain conditions: section 1326(b)(1) provides for a maximum prison sentence of 10 years if the defendant was removed following a conviction of a non-aggravated felony or convictions of three or more misdemeanors involving drugs, crimes against the person, or both; and section 1326(b)(2) provides for a maximum prison sentence of 20 years if the defendant was removed following a conviction of an aggravated felony. Id. § 1326(b). The indictment alleged that Garcia-Sandobal committed three aggravated felonies before his removal and listed his 1996 convictions for two counts of battery of a law enforcement officer and one count of obstructing or opposing an officer with violence.

Garcia-Sandobal pleaded guilty to the indictment before a magistrate judge. Garcia-Sandobal's lawyer initially stated that "Mr. Garcia is objecting to the

4

characterization of his prior conviction as an aggravated felony, just the characterization." The magistrate judge asked, "All right, is this a sentencing issue? I have told him what the penalty is. Are you disputing the penalty?" Garcia-Sandobal's attorney replied, "No, Your Honor, we're not disputing the penalty at this time, no." After some confusion as to whether the three 1996 convictions remained on his record, Garcia-Sandobal conceded that he had been convicted of an aggravated felony, but he purported to preserve a right to challenge at sentencing this classification of his prior convictions.

The magistrate judge then had the following colloquy with Garcia-Sandobal to ensure that he understood that he was pleading guilty to the offense with the enhanced penalty under section 1326(b)(2):

> THE COURT: Mr. Garcia, you appear to be quite verbal and quite familiar with your case. Am I correct in that conclusion?
>
> GARCIA-SANDOBAL (through interpreter): Yes.
>
> THE COURT: Do you understand that I'm interpreting this discussion to mean that you agree that you've been convicted of at least one felony that would carry this maximum term of 20 years imprisonment? Is that what you're agreeing to?
>
> GARCIA-SANDOBAL (through interpreter): Yes.
>
> THE COURT: The other issues are matters for sentencing, but I just want you to understand that you can't say one thing at a plea agreement and then say oh, no, it really wasn't a felony that would qualify me for that penalty. Do you understand that?
>
> GARCIA-SANDOBAL (through interpreter): Yes.

5

THE COURT: Do you still want to plead guilty?

GARCIA-SANDOBAL (through interpreter): Yes.

THE COURT: How do you wish to plead to the charge in the indictment, guilty or not guilty?

GARCIA-SANDOBAL (through interpreter): Yes, guilty.

THE COURT: Is that because you are guilty of this crime?

GARCIA-SANDOBAL (through interpreter): Yes.

The magistrate judge concluded that the plea was knowing, voluntary, and intelligent, and the magistrate judge recommended that the district court accept the plea. The magistrate judge informed Garcia-Sandobal that he had 14 days to file any objections to the recommendation. See Fed. R. Crim. P. 59(b)(2). Garcia-Sandobal did not file any objections with the district court, and the district court accepted the guilty plea.

The presentence investigation report calculated Garcia-Sandobal's offense level as 21, his criminal history category as VI, and his guideline range as 77 to 96 months of imprisonment. The calculation of Garcia-Sandobal's offense level included a 16-level enhancement because Garcia-Sandobal "previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). That enhancement was based on Garcia-Sandobal's 1996 conviction for obstructing or

6

opposing an officer with violence.  Garcia-Sandobal objected to this enhancement on the ground that his conviction was not a crime of violence, but the district court overruled that objection.

The calculation of Garcia-Sandobal's criminal history score included the assessment of two criminal history points for Garcia-Sandobal's 2009 conviction for disorderly intoxication, in accordance with section 4A1.2(c) of the Sentencing Guidelines.  See U.S.S.G. § 4A1.2(c).  The assessment of those two points increased Garcia-Sandobal's criminal history category from V to VI and increased his guideline range from 70 to 87 months of imprisonment to 77 to 96 months of imprisonment.  See id., ch. 5, pt. A, Sentencing Table.  Garcia-Sandobal objected on the ground that the offense of disorderly intoxication is similar to the offense of "public intoxication," which is not counted toward the criminal history score.  See id. § 4A1.2(c)(2).  The district court overruled this objection on the ground that the offense of disorderly intoxication is more similar to the offense of "disorderly conduct or disturbing the peace," which may be counted toward a defendant's criminal history score.  See id. § 4A1.2(c)(1).  The district court sentenced Garcia-Sandobal to 87 months of imprisonment.

## II. STANDARD OF REVIEW

"With respect to Sentencing Guidelines issues, this Court reviews 'purely legal questions de novo, a district court's factual findings for clear error, and, in

7

most cases, a district court's application of the guidelines to the facts with due deference.'" United States v. Rothenberg, 610 F.3d 621, 624 (11th Cir. 2010) (quoting United States v. Rodriguez–Lopez, 363 F.3d 1134, 1136–37 (11th Cir. 2004) (internal quotation marks omitted)). Arguments that are waived before the district court may not be reviewed on appeal. United States v. De La Garza, 516 F.3d 1266, 1271 (11th Cir. 2008).

## III. DISCUSSION

We divide our discussion in three parts. First, we explain why Garcia-Sandobal waived the argument that the district court should not have accepted his guilty plea and sentenced him under section 1326(b)(2). Second, we explain why our precedent forecloses Garcia-Sandobal's argument that he did not commit a crime of violence before being removed from the United States. Third, we explain why the district court did not err when it assigned two criminal history points for Garcia-Sandobal's prior conviction for disorderly intoxication.

*A. Garcia-Sandobal Waived His Argument That the District Court Should Not Have Accepted His Guilty Plea and Sentenced Him Under Section 1326(b)(2).*

Garcia-Sandobal argues that the district court erred when it accepted his guilty plea and sentenced him under section 1326(b)(2), but Garcia-Sandobal waived this argument when he pleaded guilty to violating that section. The indictment alleged that Garcia-Sandobal was convicted of an aggravated felony before he was deported and that the enhanced sentencing provision of section

8

1326(b)(2) applied to his case.  Garcia-Sandobal's "knowing and informed plea of guilty . . . amounted to an express admission that [section 1326(b)(2)] applied to his case," and he cannot now argue otherwise on appeal.  See United States v. Covington, 565 F.3d 1336, 1345 (11th Cir. 2009).

Garcia-Sandobal argues that he "did not agree below that he had committed an aggravated felony before his removal," but we disagree.  Although Garcia-Sandobal initially "object[ed] to the characterization of his prior conviction as an aggravated felony," he later unequivocally pleaded guilty to a violation of section 1326(b)(2) and agreed that he had been removed following a conviction for an aggravated felony.  Garcia-Sandobal told the magistrate judge that he understood that he was agreeing that he had been convicted of an aggravated felony before his removal and that he understood that he could not argue otherwise at the sentencing phase.

When he pleaded guilty, Garcia-Sandobal purported to preserve a right to challenge the classification of his prior conviction at sentencing, but we have held that a defendant cannot do so.  See United States v. Bennett, 472 F.3d 825, 832–33 (11th Cir. 2006).  In Bennett, the defendant pleaded guilty to an indictment alleging that he had at least three prior convictions for "violent felonies" under the Armed Career Criminal Act, 18 U.S.C. § 924(e).  Id. at 827.  Bennett, like Garcia-Sandobal, pleaded guilty to the indictment, but purported to "preserve an objection

9

to the classification of [his] prior convictions as violent felonies for the sentencing hearing." Id. at 828. When Bennett argued on appeal that the district court erred in sentencing him under section 924(e)(1) because he did not have three prior convictions for violent felonies, we rejected Bennett's argument. We explained that Bennett's "guilty plea included an admission to his having three prior violent felony convictions," and we explained that "[t]his alone authorized the district court to sentence Bennett as an armed career criminal under § 924(e)." Id. at 833.

Garcia-Sandobal waived his right to appellate review on this issue. Before the magistrate judge, Garcia-Sandobal unconditionally admitted having been convicted of an aggravated felony, and the magistrate judge recommended that the district court accept Garcia-Sandobal's guilty plea. Garcia-Sandobal had 14 days to file any objections to that recommendation, Fed. R. Crim. P. 59(b)(2), but he failed to file any objections. A "[f]ailure to object in accordance with [Rule 59(b)(2)] waives a party's right to review." Id.

### B. Our Precedent Forecloses Garcia-Sandobal's Argument About His Conviction For Obstructing or Opposing an Officer with Violence.

Garcia-Sandobal argues that the district court erred when it increased his offense level based on his prior conviction for obstructing or opposing an officer with violence, but Garcia-Sandobal's argument is foreclosed by our precedent. A defendant's criminal offense level is increased by 16 levels if "the defendant previously was deported, or unlawfully remained in the United States, after . . . a

10

conviction for a felony that is . . . a crime of violence." U.S.S.G.

§ 2L1.2(b)(1)(A)(ii). In 1996, Garcia-Sandobal was convicted of "knowingly and

willfully resist[ing], obstruct[ing], or oppos[ing] any officer . . . by offering or

doing violence to the person of such officer or legally authorized person." Fla.

Stat. § 843.01. After Garcia-Sandobal filed his brief, we held that "a conviction

under Florida Statute § 843.01 . . . constitutes a crime of violence for purposes of

the elements clause of U.S.S.G. § 2L1.2(b)(1)(A)(ii)." Romo-Villalobos, 674 F.3d

at 1251. Garcia-Sandobal concedes that our decision in Romo-Villalobos

forecloses his argument. The district court did not err when it applied a 16-level

enhancement based on his 1996 conviction for obstructing or opposing an officer

with violence.

### C. The District Court Properly Counted Garcia-Sandobal's Conviction for Disorderly Intoxication Toward His Criminal History Score.

Garcia-Sandobal argues that the district court erred when it counted his prior

conviction for disorderly intoxication and increased his criminal history by two

points. Garcia-Sandobal contends that disorderly intoxication is akin to public

intoxication, which is never counted, but the government responds that disorderly

intoxication is more akin to disorderly conduct or disturbing the peace, which may

be counted.

The Sentencing Guidelines provide that "[s]entences for misdemeanor and

petty offenses are counted" toward a defendant's criminal history score, subject to

11

two exceptions in subsections 4A1.2(c)(1) and 4A1.2(c)(2).  U.S.S.G. § 4A1.2(c).

Under subsection (c)(1), certain enumerated offenses and "offenses similar to

them" are to be disregarded unless "(A) the sentence was a term of probation of

more than one year or a term of imprisonment of at least thirty days, or (B) the

prior offense was similar to an instant offense."  Id. § 4A1.2(c)(1).  Among those

offenses specifically listed in subsection (c)(1) is "[d]isorderly conduct or

disturbing the peace."  Id.  Under subsection (c)(2), certain enumerated offenses

and "offenses similar to them" are "never counted" toward a defendant's criminal

history score, and among those offenses specifically listed in subsection (c)(2) is

"[p]ublic intoxication."  Id. § 4A1.2(c)(2).  The offense of "disorderly

intoxication" is not listed in either subsection (c)(1) or (c)(2).

To resolve this issue, we must decide whether Garcia-Sandobal's conviction

for disorderly intoxication is more similar to a conviction for the subsection (c)(1)

crime of "disorderly conduct or disturbing the peace" or to a conviction for the

subsection (c)(2) crime of "public intoxication."  "Because the Guidelines' default

rule for past offenses is one of inclusion, any doubts should be resolved in favor of

counting the offense."  United States v. Hernandez, 634 F.3d 317, 319 (5th Cir.

2011).  "Moreover, the defendant has the burden of showing that the exception

applies."  United States v. Martinez-Santos, 184 F.3d 196, 200 (2d Cir. 1999); see

also United States v. Howard, 923 F.2d 1500, 1505 (11th Cir. 1991) ("[T]he

12

Guidelines have been interpreted to contemplate that the defendant bears the burden of establishing the applicability of Guideline sections which would reduce the offense level.").

An Application Note to the Sentencing Guidelines lists five factors that we should consider, in a "common sense approach," to determine whether an unlisted offense is similar to one enumerated in subsection (c)(1) or subsection (c)(2):

> In determining whether an unlisted offense is similar to an offense listed in subsection (c)(1) or (c)(2), the court should use a common sense approach that includes consideration of relevant factors such as (i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

U.S.S.G. § 4A1.2 cmt. 12(A). "Sentencing Guidelines commentary explaining or interpreting the Guidelines is 'authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'" United States v. Cortes-Salazar, 682 F.3d 953, 954 (11th Cir. 2012) (quoting Stinson v. United States, 508 U.S. 36, 38, 113 S. Ct. 1913, 1915 (1993)). We apply these five factors mindful that, although the definitions of "disorderly conduct" and "public intoxication" within the meaning of the Sentencing Guidelines are matters of federal law, we look to state law definitions of these crimes for guidance. See United States v. Palomino Garcia, 606 F.3d 1317, 1327–28 (11th Cir. 2010).

13

As both parties agree, the five-factor test under section 4A1.2(c) requires that we consider the underlying facts of Garcia-Sandobal's conviction. The Sentencing Commission adopted the five-factor test from precedents of the Fifth Circuit that considered both the elements of the offense and the underlying facts of the dispute. See, e.g., United States v. Gadison, 8 F.3d 186, 194 (5th Cir. 1993); United States v. Moore, 997 F.2d 30, 34–35 (5th Cir. 1993); United States v. Hardeman, 933 F.2d 278, 282 (5th Cir. 1991). When it adopted this test, the Commission favorably cited both Hardeman and a decision of the Seventh Circuit, United States v. Booker, 71 F.3d 685 (7th Cir. 1995), which also considered the underlying facts of the dispute, id. at 690. See U.S.S.G. app. C at 240–41 ("This amendment, at Application Note 12(A), adopts the Hardeman 'common sense approach' as a means of ensuring that courts are guided by a number of relevant factors that may help them determine whether a non-listed offense is similar to a listed one."). In weighing some of the factors, including the level of punishment, the level of culpability, and likelihood of recurring criminal conduct, other courts too have considered the underlying facts. See, e.g., United States v. Burge, 683 F.3d 829, 835 (7th Cir. 2012); Hernandez, 634 F.3d at 319; United States v. Grob, 625 F.3d 1209, 1216–17 (9th Cir. 2010); United States v. Maldonado, 614 F.3d 14, 18 (1st Cir. 2010); United States v. DeJesus-Concepcion, 607 F.3d 303, 305 (2d Cir. 2010).

14

A careful consideration of the five factors establishes that Garcia-Sandobal's conviction for disorderly intoxication is more similar to a conviction for disorderly conduct than to a conviction for public intoxication. Not all of the factors weigh against Garcia-Sandobal, but four of the five do.

The first factor asks us to compare the "punishments imposed for the listed and unlisted offenses," U.S.S.G. § 4A1.2 cmt. 12(A), and this factor weighs in equipoise. Florida punishes disorderly intoxication and disorderly conduct under an identical scheme: both offenses are classified as second-degree misdemeanors, and both offenses carry a maximum penalty of 60 days in jail and a $500 fine, as provided in sections 775.082 and 775.083. See Fla. Stat §§ 775.082(4)(b), 775.083(1)(e), 856.011, 877.03. Florida does not proscribe an offense called "public intoxication," but the public intoxication statute repealed in 1973 provided that "[w]hoever shall be or become drunk from the voluntary use of intoxicating liquors or drugs shall be guilty of a misdemeanor of the second degree, punishable as provided in § 775.082 or § 775.083." Fla. Stat. § 856.01 (1971). Because Florida punishes or has punished public intoxication, disorderly intoxication, and disorderly conduct with similar levels of punishment, we cannot conclude based on this factor whether a conviction for disorderly intoxication is more similar to a conviction for public intoxication or to a conviction for disorderly conduct.

15

The second factor asks us to consider "the perceived seriousness of the offense as indicated by the level of punishment," U.S.S.G. § 4A1.2 cmt. 12(A), and this factor weighs in favor of determining that the conviction for disorderly intoxication is similar to a conviction for "disorderly conduct or disturbing the peace" and should count toward Garcia-Sandobal's criminal history score. The offense of disorderly intoxication carries a maximum jail sentence of 60 days, Fla. Stat. §§ 775.082(4)(b), 856.011, and Garcia-Sandobal was initially sentenced to 50 days of imprisonment and 12 months of probation. But Garcia-Sandobal was then sentenced to an additional 60 days of imprisonment after his probation was revoked, and the Guidelines direct us to consider both the original sentence and any term of imprisonment imposed due to revocation of probation. See U.S.S.G. § 4A1.2(k)(1); United States v. Coast, 602 F.3d 1222, 1223–24 (11th Cir. 2010). Garcia-Sandobal's 110-day term of imprisonment is nearly four times as long as the 30-day "triggering period" of section 4A1.2(c)(1), which suggests that his offense is at least as serious as those crimes listed in subsection (c)(1) and is of sufficient severity that it should count toward his criminal history score. It is difficult to imagine a scenario where an individual spends nearly one-third of a year in jail for endangering the public or causing a disturbance, yet his conviction is not considered serious enough to count toward his criminal history score.

16

The third factor asks us to consider "the elements of the offense," U.S.S.G. § 4A1.2 cmt. 12(A), and this factor also weighs in favor of determining that a conviction for disorderly intoxication is similar to a conviction for "disorderly conduct or disturbing the peace."  Both disorderly intoxication and disorderly conduct share the critical element that the offender actually endangers the public or causes a public disturbance, and this element is absent from the offense of public intoxication.  The Florida statute for disorderly intoxication provides, "No person in the state shall be intoxicated and endanger the safety of another person or property, and no person in the state shall be intoxicated or drink any alcoholic beverage in a public place or in or upon any public conveyance and cause a public disturbance."  Fla. Stat. § 856.011(1).  Florida courts recognize that a conviction under the Florida statute for disorderly intoxication requires proof that the defendant "endangered [some]one or created a public disturbance."  Papalas v. State, 645 So. 2d 153, 155 (Fla. Dist. Ct. App. 1994).  The Florida statute for disorderly conduct also requires that a person actually cause a public disturbance:

> Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree . . . .

Fla. Stat. § 877.03.  The requirement under the Florida statute for disorderly intoxication that a person "endanger the safety of another person or property" or

17

"cause a public disturbance" also mirrors language found in statutes proscribing disorderly conduct or breach of the peace across the country.  See, e.g., Del. Code Ann. tit. 11, § 1301 (providing that "disorderly conduct" includes any act "[d]isturbing any lawful assembly"); 720 Ill. Comp. Stat. 5/26-1 (providing that "disorderly conduct" includes any act that "disturb[s] another and [] provoke[s] a breach of the peace"); Iowa Code § 723.4 (providing that "disorderly conduct" includes any act that "disturbs any lawful assembly"); Minn. Stat. § 609.72 (providing that "disorderly conduct" includes any act that tends to "disturb others or provoke an assault or breach of the peace"); Neb. Rev. Stat. § 28-1322 (providing that "disturbing the peace" including any conduct that "disturb[s] the peace and quiet of any person"); N.J. Stat. Ann. § 2C:33-2 (providing that "disorderly conduct" includes "[c]reat[ing] a hazardous or physically dangerous condition by any act which serves no legitimate purpose of the actor").

The parties disagree about the definition of the crime of public intoxication, in part because the several states have not adopted a common definition of that offense.  The government argues, on the one hand, that the Guidelines adopt the common-law definition of public intoxication, which prohibits being drunk in public, but does not require the additional element that the individual pose a risk of danger to the public.  Several states and Black's Law Dictionary adopt this definition of public intoxication.  See, e.g., Iowa Code § 123.46(2); Miss. Code

18

Ann. § 97-29-47; Va. Code Ann. § 18.2-388; W. Va. Code § 60-6-9(a)(1); Black's Law Dictionary 898 (9th ed. 2009) (defining "public intoxication" as "[t]he condition of a person who is under the influence of drugs or alcohol in a place open to the general public"). Garcia-Sandobal contends, on the other hand, that the offense of public intoxication requires that a person be drunk in public and present a risk of danger to other persons or property. The Model Penal Code and many states adopt this definition of public intoxication. See, e.g., Del. Code Ann. tit. 11, § 1315; Ky. Rev. Stat. Ann. § 222.202(1); 18 Pa. Cons. Stat. Ann. § 5505; Tex. Penal Code Ann. § 49.02; Utah Code Ann. § 76-9-701; Model Penal Code § 250.5 (providing a "public drunkenness" statute that proscribes being intoxicated in a public place "to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity"); see also 36 C.F.R. § 2.35(c) (providing that "[p]resence in a park area when under the influence of alcohol or a controlled substance to a degree that may endanger oneself or another person, or damage property or park resources, is prohibited"). And the other states in this Circuit proscribe intoxication in public accompanied by offensive conduct: Alabama has a "public intoxication" statute that proscribes "appear[ing] in a public place under the influence of alcohol . . . to the degree that [the offender] endangers himself or another person or property, or by boisterous and offensive conduct annoys another person in his vicinity," Ala. Code § 13A-11-10; and Georgia has a "public

19

drunkenness" statute that proscribes "appear[ing] in an intoxicated condition in any public place . . . which condition is made manifest by boisterousness, by indecent condition or act, or by vulgar, profane, loud, or unbecoming language," Ga. Code Ann. § 16-11-41.  Although the states have defined public intoxication differently, the meaning of "public intoxication" in the Sentencing Guidelines does not "depend on the definition adopted by the State of conviction."  See Taylor v. United States, 495 U.S. 575, 590, 110 S. Ct. 2143, 2154 (1990).

We need not decide whether the Guidelines adopted the definition of public intoxication under the common law or the Model Penal Code because the Florida statute is dissimilar to both definitions.  There are two critical differences between the Florida statute, on the one hand, and both the common law and the Model Penal Code, on the other hand: Florida requires that the person actually cause a public disturbance, and Florida does not proscribe any drunkenness that might harm only the intoxicated person himself.  The common-law crime of public intoxication punishes being drunk in public, and the Model Penal Code, which has been adopted by several states, punishes being intoxicated in public "to the degree that [the offender] may endanger himself or other persons or property, or annoy persons in his vicinity."  Model Penal Code § 250.5 (emphasis added); see also Del. Code Ann. tit. 11, § 1315; Ky. Rev. Stat. Ann. § 222.202(1); 18 Pa. Cons. Stat. Ann. § 5505; Tex. Penal Code Ann. § 49.02; Utah Code Ann. § 76-9-701.

20

The Florida disorderly intoxication statute punishes more culpable conduct than either the common law or the Model Penal Code: the Florida statute requires that an individual actually "endanger the safety of another person or property" or "cause a public disturbance." Fla. Stat. § 856.011(1). Conduct that actually endangers the public is more similar to disorderly conduct than to public intoxication, regardless of whether the offender is sober or drunk when he committed the conduct. The public intoxication statute of Utah illustrates the important distinction between the risk of endangering others and actually endangering others: that statute punishes intoxication in public if it "may endanger the person or another," but punishes intoxication in private only if it actually "unreasonably disturbs other persons." Utah Code Ann. § 76-9-701; see Due S., Inc. v. Dep't of Alcoholic Beverage Control, 197 P.3d 82, 91 (Utah 2008). Moreover, the Model Penal Code and most state "public intoxication" statutes punish public drunkenness that either poses a danger to the public or to the intoxicated person himself. See Model Penal Code § 250.5 (punishing intoxication when the person is drunk "to the degree that he may endanger himself"); see also Del. Code Ann. tit. 11, § 1315; Ky. Rev. Stat. Ann. § 222.202(1); 18 Pa. Cons. Stat. Ann. § 5505; Tex. Penal Code Ann. § 49.02; Utah Code Ann. § 76-9-701. But the Florida disorderly intoxication statute punishes only activity that actually endangers or disrupts the public. Fla. Stat. § 856.011(1).

21

The similarities between the Florida statute and the statutes of two other states also suggest that Garcia-Sandobal's conviction for disorderly intoxication is more akin to a conviction for disorderly conduct than to a conviction for public intoxication. Michigan and North Carolina, like Florida, have statutes that proscribe conduct by an intoxicated person that actually endangers the public, but those statutes do not proscribe conduct that potentially endangers the public or the intoxicated person himself. Those two states label their offenses as disorderly or disruptive conduct, not public intoxication. Mich. Comp. Laws § 750.167(1)(e) ("[d]isorderly person[s]" statute); N.C. Gen. Stat. § 14-444 ("[i]ntoxicated and disruptive in public" statute). The critical element of the Florida statute — that a person actually endanger the public or cause a public disturbance — is shared with statutes that proscribe disorderly conduct, but not with statutes that proscribe public intoxication.

The fourth factor asks us to consider "the level of culpability involved" in the offense, U.S.S.G. § 4A1.2 cmt. 12(A), and it weighs in favor of determining that disorderly intoxication is similar to "disorderly conduct or disturbing the peace." "[A]n offense bears greater culpability when it presents an increased risk of harm to others." Hernandez, 634 F.3d at 320. Garcia-Sandobal was convicted of actually "endanger[ing] the safety of another person or property" or "caus[ing] a public disturbance." See Fla. Stat. § 856.011. According to the presentence report,

22

Garcia-Sandobal "was almost struck by a vehicle as he was walking" in the middle of a road at 2:36 a.m. Crimes that present an actual threat to public safety are likely to be more similar to crimes in subsection (c)(1) of the Guidelines than to crimes in subsection (c)(2). "[A]n examination of the offenses listed in subsection (c)(1) reveals that many of these offenses . . . exhibit some measure of indifference to the public." Hardeman, 933 F.2d at 282. For example, subsection (c)(1) lists crimes including careless or reckless driving, providing false information to a police officer, hindering or failure to obey a police officer, resisting arrest, and trespass. See U.S.S.G. § 4A1.2(c)(1). By contrast, the Sentencing Commission excepted in subsection (c)(2) crimes with a more indirect and attenuated threat to the public, including loitering, vagrancy, minor traffic violations, hitchhiking, juvenile truancy, and fish and game violations. See U.S.S.G. § 4A1.2(c)(2). Because the Florida crime of disorderly intoxication punishes conduct that poses a significant risk of harm to others, it has a level of culpability that suggests it should be grouped with the crimes listed in subsection (c)(1) and that Garcia-Sandobal's conviction should count toward his criminal history score.

Garcia-Sandobal argues that public intoxication, under the Guidelines, includes conduct that actually endangers the public, but this argument contradicts the text and structure of section 4A1.2(c). Garcia-Sandobal's proposed reading of the Guidelines would lead to the absurd result that a sober person who disturbs the

23

peace and is convicted of "disorderly conduct" would have his conviction count toward his criminal history score, see id. § 4A1.2(c)(1), but an intoxicated person who disturbs the peace and is convicted of a crime labeled "public intoxication" would not have his conviction count toward his criminal history, see id. § 4A1.2(c)(2). We decline to give an offender a break in his criminal history score because he became drunk before he caused a public disturbance.

Our reading of public intoxication as not including offenses that actually disturb the peace is also consistent with the canon of construction of noscitur a sociis, whereby "a word is known by the company it keeps." Gustafson v. Alloyd Co., 513 U.S. 561, 575, 115 S. Ct. 1061, 1069 (1995). That canon directs us to read public intoxication in the context of the crimes listed alongside it in subsection (c)(2). As mentioned earlier, the other offenses in subsection (c)(2) are more benign offenses that pose an attenuated and indirect risk to the public. If "public intoxication" included conduct like that proscribed by the Florida statute for disorderly intoxication, which requires actual harm to the public, it would have been anomalous for the Sentencing Commission to place public intoxication in subsection(c)(2).

The fifth factor asks us to consider "the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct," U.S.S.G. § 4A1.2 cmt. 12(A), and it too weighs in favor of determining that disorderly intoxication is

24

similar to "disorderly conduct or disturbing the peace." "[T]he seriousness of the offense is one indication of whether the offense has any predictive capacity for future criminality," Hardeman, 933 F.2d at 283, and someone who gets drunk and walks in the middle of a public road at 2:36 a.m., nearly causing a collision with an oncoming vehicle, engages in conduct that suggests the likelihood of recurring criminal conduct. Garcia-Sandobal's prison sentence for 110 days also suggests that his offense is serious and exhibits a likelihood of recurring criminal conduct.

The distinction we draw between Garcia-Sandobal's conviction for disorderly intoxication and the public intoxication statutes of several states also makes sense when considered against the history of public intoxication laws. At common law, public intoxication statutes punished mere drunkenness, see 4 William Blackstone, Commentaries * 41, and historically most states prohibited, under the heading of public intoxication, the act of being drunk in public, see American Law Institute, Model Penal Code and Commentaries: Part II, § 250.5 cmt. 1(a) at 375 (1980). In the 1960s, there was a movement to decriminalize mere drunkenness, which led to the definition of public intoxication in the Model Penal Code and to the recommendation in the 1967 Report by the President's Commission on Law Enforcement and Administration of Justice that "[d]runkenness should not in itself be a criminal offense," but that "[d]isorderly and other criminal conduct accompanied by drunkenness should remain punishable

25

as separate crimes." The Challenge of Crime in a Free Society, A Report by the President's Commission on Law Enforcement and Administration of Justice 236 (1967). The Sentencing Commission wanted to ensure that convictions for only being drunk in public are not counted toward a defendant's criminal history score, and perhaps the Sentencing Commission wanted to ensure that convictions for being drunk and posing a potential danger to the public or to oneself are not counted toward a defendant's criminal history score. But the Sentencing Commission stated that convictions for disorderly conduct and disturbing the peace may be counted toward a defendant's criminal history, and Garcia-Sandobal was punished under the Florida statute for endangering the public and causing a public disturbance, in addition to being intoxicated.

The district court did not err when it assessed two criminal history points for Garcia-Sandobal's conviction for disorderly intoxication. Garcia-Sandobal failed to satisfy his burden of establishing that his prior conviction falls within the exception to the default rule of counting toward his criminal history score. Garcia-Sandobal's prior conviction is more similar to a conviction for disorderly conduct or disturbing the peace, which may be counted, than to a conviction for public intoxication, which is never counted.

## IV. CONCLUSION

We **AFFIRM** Garcia-Sandobal's guilty plea and sentence.