[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10578
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cr-20160-DLG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OLIVER GAYLE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 27, 2015)

Before TJOFLAT, WILSON, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant Oliver Gayle appeals his convictions for one count of possessing

15 or more unauthorized access devices (Count 1), three counts of aggravated identity theft (Counts 2, 3, 4), and one count of fraud and misuse of a visa (Count 5), in violation of 18 U.S.C. §§ 1029(a)(3), 1028A(a)(1), and 1546(a), respectively. Defendant raises three arguments on appeal.  First, Defendant argues that the district court erred in denying his motion to suppress.  Second, he argues that the district court abused its discretion in denying his motion for a mistrial based on the Aventura Police Department's failure to properly preserve the recording of his post-arrest interview and timely inform the defense that the recording had not been preserved.  Lastly, he argues that the evidence was insufficient to support a conviction on one of the aggravated identity theft counts (Count 3).  After careful review, we affirm Defendant's convictions.

## I.  Background

A.    <u>Underlying Fraud Scheme</u>

From October 8, 2012 through December 28, 2012, Defendant, through a temporary staffing company, worked in the cashier's office of the Mt. Sinai Medical Center ("Mt. Sinai").  In December 2012, he was reassigned to Mt. Sinai's purchasing department, where he worked until February 2013.

In December 2012 and January 2013, Defendant used his ID badge to enter the cashier's office after the other employees had left.  Using a co-worker's username and password, he logged into the computer system and printed

2

screenshots of patient information, including names, dates of birth, addresses, and social security numbers. He printed approximately 94 pages of screenshots from the Mt. Sinai computer database. Those 94 pages contained approximately 700 names, dates of birth, and social security numbers, of which 613 matched the information maintained by the Social Security Administration. Defendant also photocopied approximately 207 checks (dated December 2012 through February 2013) made payable to Mt. Sinai from individual patients. He then used this personal identifying information to file tax returns. He received tax refunds on prepaid debit cards.

B.    Search of Defendant's Vehicle and Home

In February 2013, police officers with the Aventura Police Department responded to a call from a bank employee about an attempt to cash a fraudulent check. The bank employee told the officers that the person who had attempted to cash the check was one of three black males who had driven away in a dark grey SUV. Approximately one block north of the bank, police officers observed Defendant driving a vehicle matching that description, with two black males ducked down in the back seat, trying to conceal themselves. The officers initiated a traffic stop because Defendant was not wearing a seatbelt.

Defendant provided the officers with a Florida ID card and what appeared to be a fake Jamaican passport. The officers ran the vehicle's license plate and

learned that the vehicle was rented.  Defendant told the officers that he had borrowed the car from a friend, Gerard Reeves, and that he did not have the rental agreement.  The officers arrested Defendant after a records check showed that he was driving with a suspended license.  Because the vehicle was blocking traffic and because neither of the other two passengers had a valid driver's license, the officers decided to have the vehicle towed.

Prior to having the vehicle towed, the officers conducted an inventory search of the vehicle.  In the floorboard of the front passenger seat, the officers found an open, black bag with paperwork hanging out of it.  The officers observed hundreds of documents containing personal identification information in the bag.  A later search of the bag revealed approximately 94 pages of computer screenshots printed from the Mt. Sinai computer database and 207 photocopies of checks made payable to Mt. Sinai from individual patients.

During a post-arrest interview, Defendant consented to a search of the home that he shared with Reeves and one other person.  The search of Defendant's bedroom revealed additional printed screenshots from Mt. Sinai's patient database, prepaid debit cards issued in various names, tax returns completed in various names, more copies of checks made payable to Mt. Sinai, and a notepad containing the tax return information.  Additional screenshots from the Mt. Sinai patient database were also found in the desk area of the foyer.

4

C.    Motion to Suppress

Federal authorities ("the Government") took over Defendant's case and Defendant was indicted on federal charges.  During pretrial proceedings, Defendant moved to suppress the numerous documents (computer printouts, copies of checks, tax returns, notepad, and prepaid debit cards) that were spilling out of and inside the open bag that officers discovered during their inventory search of the impounded vehicle that Defendant had been driving when arrested.  Significant to this appeal, Defendant did not challenge the propriety of the original initial stop of the vehicle.  Instead, he challenged, somewhat obliquely, the propriety of an inventory search of his vehicle.  He also argued, again in a cursory fashion, that the officers could not rely on the "plain view" doctrine to justify their examination of the documents that were spilling out of and inside the open bag.

The Government opposed Defendant's suppression motion arguing both (1) that Defendant lacked standing to challenge the search of the vehicle because the vehicle was rented, he was not listed as an authorized driver on the rental agreement, and he lacked a valid driver's license and (2) that the search was valid on the merits.

After an evidentiary hearing, the magistrate judge issued a report and recommendation ("R&R") on July 3, 2013.  The magistrate judge recommended denying Defendant's motion to suppress.  The magistrate judge concluded that

5

Defendant lacked standing to challenge the search. Leaving aside the question of Defendant's standing, he also concluded that the police officers properly searched Defendant's bag as part of an inventory search and further that the incriminating documents were in plain view. The R&R instructed the parties that they had 14 days to "serve and file written objections" with the district court. Neither party filed any objections to the R&R.

On July 26, 2013, after conducting an independent review of the record and noting that no objections to the R&R had been filed, the district court adopted the R&R and denied Defendant's suppression motion. On August 7, 2013, Defendant moved the district court to reconsider its adoption of the R&R and sought permission to file out-of-time objections to the R&R.[1] The district court denied this motion.

### D.    Trial Proceedings

Defendant proceeded to a jury trial, which began on October 16, 2013. Defendant moved for a mistrial after an Aventura police detective testified that, although Defendant's post-arrest interview had been recorded, the police department did not have the recording because the recording device had malfunctioned and the department had been unsuccessful in retrieving the recording from the device. Defendant argued that the Government's failure to

---

[1] Defendant explained that he filed his objections out of time because he had been preparing to enter a guilty plea, but then had changed his mind.

disclose this information in its response to the standing discovery order was a *Brady*[2] violation.  Defendant later tweaked this argument, claiming that the Government's failure to earlier disclose the above facts was actually more of a due process violation than a *Brady* violation.

The district court questioned the detective and reviewed the police department's emails relating to its history of issues with the recording device and its attempts to recover the recording.  The court held an evidentiary hearing at which the police captain, a police officer familiar with the recording device, and a representative from the company that serviced the recording device testified.  The district court denied Defendant's motion for a mistrial.

In denying the motion, the district court determined that Defendant could not prevail under *Brady* because he had not shown that the evidence was exculpatory. The district court further found that the Government's failure to disclose the information about the recording was not a due process violation because Defendant had not shown bad faith on the part of the police.

At the close of the evidence, Defendant moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure on Counts 1 through 4. The district court denied the motion.  The jury found Defendant guilty on all counts, and the district court subsequently imposed a 51-month sentence.

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

## II. Discussion

A.    <u>Motion to Suppress</u>

1.    Parties' Positions

On appeal, Defendant argues that the district court erred in denying his motion to suppress the evidence found during the search of the vehicle he was driving.  As in the suppression proceedings below, he continues to argue that he has standing to challenge the search of the vehicle, but he no longer argues that the inventory search was improper nor does he dispute that the documentary evidence discovered in his bag was in plain view.  Instead, he argues for the first time that, under Florida law, a driver's failure to wear a seatbelt does not justify a stop by the police.

Because Defendant does not raise on appeal the grounds that he cited in his suppression motion—the propriety of an inventory search and the Government's reliance on the plain view doctrine—we conclude that he has abandoned any challenge to the search based on those grounds.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (holding that arguments not raised on appeal are deemed abandoned).  Instead, Defendant proceeds only on an argument that the initial stop of the vehicle was improper.

The Government argues that we should not entertain any effort by Defendant to challenge the search because, in violation of Rule 59(b)(2) of the Federal Rules

of Criminal Procedure, Defendant failed to file written objections to the magistrate judge's R&R within the prescribed 14-day time period and, by the time he got around to objecting to the R&R, the district court had already issued its order adopting that R&R and denying Defendant's suppression motion.  The Government also argues that, even if Defendant has not waived his challenge to the denial of the suppression motion, he cannot prevail on appeal because (1) the magistrate judge correctly concluded that Defendant lacked standing to contest the search and (2) Defendant's attack on the legality of the stop of the vehicle, raised for the first time on appeal, has no merit.

Resolution of the first two issues on these facts—whether Defendant waived any challenge to the ruling on the suppression motion and whether he has standing to contest the search—is uncertain under existing precedent.  Resolution of the third and ultimate issue—the legality of the stop of vehicle under Florida law—is straightforward, and Defendant cannot prevail on that argument.  Accordingly, because Defendant's challenge to the stop of the vehicle fails, on the merits, we reject Defendant's contention that the search in this case should be suppressed. We do, however, briefly address the first two issues.

9

> 2.    Whether Defendant Waived His Right To Challenge The Magistrate Judge's Recommendation To Deny Defendant's Suppression Motion

Federal Rule of Criminal Procedure 59(b)(2) requires a party who disagrees with a magistrate judge's recommendation to file "specific written objections" within 14 days of being served with the R&R.  The rule further provides that "[f]ailure to object in accordance with this rule waives a party's right to review[,]" and constitutes a waiver of the defendant's right to appellate review of the district court's adoption of the R&R.  Fed. R. Crim. P. 59(b)(1)-(2).

Here, Defendant did not file objections to the magistrate judge's R&R within the specified time period.  Instead, Defendant waited until <u>after</u> the district court had already adopted the R&R denying his motion to suppress before offering his disagreement with the magistrate judge's conclusions.[3]  The district court declined to reconsider its earlier ruling.  Federal Rule of Criminal Procedure 59(b)(2) provides that a failure to object to the magistrate judge's R&R within 14 days of service of the R&R "waives a party's right to review."  Citing that rule, we have held that a defendant who has failed to file objections to a magistrate judge's R&R has waived his right to appellate review of the magistrate judge's

---

[3]  As noted, the magistrate judge issued the R&R on July 3, 2013.  Defendant should have filed any objections within 14 days thereafter, or by July 17, and failed to do so.  The district court adopted the R&R recommending denial of the suppression motion on July 26, 2013.  On August 7, 2013, Defendant filed his motion for the court to reconsider that ruling, which we construe as Defendant's belated objections to the R&R.  The district court denied that motion.  Trial began on October 16.

recommendation and the district court's adoption of that recommendation.  *See*

*United States v. Holt*, 777 F.3d 1234, 1257-58 (11th Cir. 2015) (defendant who

failed to object to magistrate judge's recommended denial of motion to suppress

wiretap evidence before district court waived right to seek review of that ruling on

appeal to the circuit court); *United States v. Garcia-Sandobal*, 703 F.3d 1278,

1282-83 (11th Cir. 2013) (defendant waived his right to challenge the district

court's adoption of the magistrate judge's recommendation to accept the

defendant's guilty plea by not filing objections to the magistrate judge's R&R).

Yet, in those cases where we have found waiver, the defendants had failed to

file any objections before the district court and instead had first challenged the

R&R on appeal to our court.  Here, Defendant belatedly filed his objections, after

the 14-day deadline set by Rule 59, but before trial in the case.  We have thus far

not decided whether a tardy filing of objections automatically gives rise to a waiver

and, if not, what factors should be considered in determining the ramifications and

standard of review that attend an untimely filing of objections.  As noted, we will

assume without deciding, that Defendant's tardy filing in this case does not prevent

us from reviewing his present challenge to the search on appeal.[4]

---

[4] Of course, Defendant is not seeking review of any determinations made by the magistrate judge in the R&R to which Defendant made untimely objections.  As noted, Defendant does not raise on appeal the propriety of the inventory search or application of the plain view doctrine, which were the two grounds for suppression that the R&R addressed. Instead, Defendant seeks review of a different ground he newly asserts in support of suppression:

11

3.    Whether Defendant Had Standing To Challenge The Search

The Government argues that even if Defendant had preserved the right to challenge the search, he lacks standing to do so because he was an unlicensed driver of the rental car that was searched, and the rental contract did not list him as an authorized driver.  As an initial matter, we have yet to consider whether an unlicensed and unauthorized driver of a rental car has standing to challenge the search of the rented vehicle.  The circuits that have considered the issue are split.  The Fourth, Fifth, and Tenth Circuits have held that unauthorized drivers of rental vehicles never have standing to challenge a vehicle search.  *United States v. Wellons*, 32 F.3d 117, 119 (4th Cir. 1994); *United States v. Boruff*, 909 F.2d 111, 117 (5th Cir. 1990); *United States v. Obregon*, 748 F.2d 1371, 1374-75 (10th Cir. 1984).  On the other hand, the Eighth and Ninth Circuits have held that an unauthorized driver may challenge the search of a rental vehicle if he can establish that he had permission from the authorized driver to use the vehicle.  *United States v. Thomas*, 447 F.3d 1191, 1198-99 (9th Cir. 2006); *United States v. Best*, 135 F.3d 1223, 1225 (8th Cir. 1998).  The Third and Sixth Circuits have determined that an unauthorized driver does not have standing to challenge the search, but has noted the possibility that exceptional circumstances might create the legitimate

---

the propriety of the initial stop of the vehicle.  As explained below, we will review this claim, raised for the first time on appeal, for plain error.

expectation of privacy. *United States v. Kennedy*, 638 F.3d 159, 165 (3d Cir. 2011); *United States v. Smith*, 263 F.3d 571, 586-87 (6th Cir. 2001).

Because Defendant cannot prevail on his challenge of the search of the vehicle, even if he had standing to do so, we need not decide this standing question here.

### 4.    The Stop Of The Vehicle Was Proper

Defendant argues that police officers lacked reasonable suspicion to stop the vehicle he was driving based on the fact that he was not wearing his seat belt. Accordingly, he contends that the evidence discovered after this stop should have been suppressed by the district court. Because rulings on motions to suppress involved mixed questions of fact and law, we ordinarily review the district court's factual findings for clear error, and its application of the law to the facts *de novo*. *United States v. Lewis*, 674 F.3d 1298, 1302-03 (11th Cir. 2012). Here, however, Defendant is challenging for the first time on appeal the propriety of the initial stop of the vehicle he was driving. Accordingly, we review only for plain error. *See United States v. Madden*, 733 F.3d 1314, 1322 n.6 (11th Cir. 2013). Under plain error review, we will reverse where there is "(1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and . . . (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1322.

A traffic stop is reasonable, and therefore constitutional, if the officer conducting the stop has probable cause to believe that a traffic violation has occurred. *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008). Under Florida law, driving without wearing a seatbelt is a traffic violation. *See* Fla. Stat. § 316.614(4)(b) & (8).

Contrary to Defendant's argument, at the time of Defendant's 2013 stop, police officers could pull drivers over solely because the driver was not wearing a seatbelt. It is true that prior to 2009, Florida Statute § 314.614(8) provided that enforcement of the seatbelt law could only be made "as a secondary action when a driver of a motor vehicle has been detained for a suspected violation of another section of this chapter." *See* Fla. Stat. § 316.614, Historical and Statutory Notes, Florida Laws 2009, c. 2009-32 § 1. However, in 2009, prior to Defendant's stop, the above sentence was deleted. *See id.* Accordingly, Defendant's initial stop was proper because the officers had probable cause to believe that the traffic violation of driving without wearing a seatbelt had occurred.

Accordingly, the district court committed no plain error by failing, *sua sponte*, to suppress the evidence based on this newly-asserted ground.

B.    Motion for Mistrial

Defendant argues that the district court should have granted his motion for a mistrial because the Government (1) violated his due process rights by not

14

preserving the recording of his post-arrest interview and (2) committed a *Brady* violation when it failed to disclose to the defense that a recording had been made, but not properly preserved.  We consider each ground in turn.

1.    Due Process Violation Based On Failure To Preserve Evidence

The district court's conclusion that no due process violation occurred is a mixed question of law and fact.  We review the district court's factual conclusions under the clearly erroneous standard and the court's legal conclusions *de novo*. *United States v. Revolorio-Ramo*, 468 F.3d 771, 774 (11th Cir. 2006).

To show that the loss of evidence by the Government constitutes a due process violation, the defendant must show that the evidence was likely to significantly contribute to his defense.  *California v. Trombetta*, 467 U.S. 479, 488 (1984).  "To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  *Id.* at 489 (citation omitted). "[F]ailure to preserve this 'potentially useful evidence' does not violate [the] due process clause 'unless a criminal defendant can show bad faith on the part of the police.'"  *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)).

Here, we agree with the district court that Defendant has not shown that the

police department's failure to preserve the recording of Defendant's post-arrest interview deprived him of due process.  Defendant does not argue on appeal that there was evidence of bad faith on the part of the police, but rather he contends that the police exhibited "at least gross negligence."  However, Supreme Court precedent is clear that a defendant must show bad faith on the part of the police to prevail on a due process claim based on the failure to preserve evidence.  *See id.*

In any event, the district court properly found no bad faith.  The detective who interviewed Defendant testified that he tried to record the interview, but the recording device malfunctioned,[5] and, by the time he went to retrieve the recording (after first searching Defendant's home), the recording device had been sent off for servicing.  Testimony from a police captain, another officer familiar with the issues with the recording device, and a representative from the company that serviced the device, as well as internal police department emails, reflected that the police department had been trying to get the recording device to work correctly for more than two years before the manufacturer ultimately agreed to replace it.  Because the detective who interviewed Defendant did not work in the Detective Bureau, it was unlikely that he was aware of the long-standing issues with the recording device.  Prior to the device being taken away, the police department, with the help of a service technician, tried to offload the recording of Defendant's interview

---

[5] The problem with the recording device was that the audio and video were out of sync.

16

from the device, but was unsuccessful, and the manufacturer never returned the hard drive from the recording device to the police department.

In short, there is no evidence that the police purposely destroyed the recording of Defendant's interview. Rather, it is undisputed that the police attempted, albeit unsuccessfully, to retrieve the recording from the defective recording device. As Defendant cannot show bad faith, we conclude that the failure to preserve the recording was not a due process violation and the district court properly denied Defendant's motion for a mistrial on this ground.

### 2.    *Brady* Violation Based On Failure To Disclose

We review the district court's denial of a *Brady* objection for an abuse of discretion. *United States v. Vallejo*, 297 F.3d 1154, 1163 (11th Cir. 2002).

While a due process violation based on the failure to preserve evidence requires bad faith, suppression of "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To establish a *Brady* violation, a defendant must show that (1) the Government possessed evidence favorable to him, either because it is exculpatory or impeaching; (2) he did not possess the evidence, nor could he obtain it himself with reasonable diligence; (3) the Government suppressed the evidence; and (4) had the evidence been disclosed to the defense, a reasonable

17

probability exists that the outcome of the proceedings would have been different. *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-110 (1976).

Here, Defendant has not demonstrated a reasonable probability that the outcome of his trial would have been different had the Government disclosed prior to trial that the police had recorded Defendant's post-arrest interview, but the recording had not been preserved. Defendant merely speculates that he would have been able to recover the recording had he known of this issue.

Even if Defendant had been able to retrieve the recording from the device, he has not shown that there was a reasonable probability that the recording of his post-arrest interview would have altered the outcome of his trial. The detective testified that, in his post-arrest interview, Defendant changed his story about who the bag and the documents belonged to. According to the detective, Defendant initially denied, but later admitted, that the bag was his. The detective also testified that Defendant changed his story about how the documents got into the bag and that Defendant had implicated another person as being responsible for

18

putting the documents in the bag.  However, based on the information provided about this person, the detective was never able to locate him.  Defendant does nothing more than speculate that the recording may contradict the detective's testimony regarding the interview.  Indeed, Defendant does not argue here, and did not argue in the district court, that the detective's testimony misrepresented Defendant's statements from his post-arrest statement.  As Defendant failed to show a reasonable probability that the outcome of his trial would have been different, we conclude that the district court did not abuse its discretion in denying Defendant's motion for a mistrial based on a *Brady* violation.[6]

### C.    Sufficiency of the Evidence

Finally, Defendant challenges the sufficiency of the evidence supporting his conviction on Count 3, which charged that he had "knowingly transfer[red], possess[ed] and use[d], without lawful authority" J.P.'s name and date of birth. Defendant argues that the Government failed to present evidence that he possessed and used J.P.'s identity without lawful authority.

We review *de novo* whether the evidence was sufficient to sustain a conviction.  *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009).  We

---

[6] On appeal, Defendant also argues that, in denying his motion for a mistrial, the district court erred by not separately analyzing the two layers of misconduct discussed above.  We disagree, as the record reflects that the district court separately considered whether the evidence was exculpatory as required for a *Brady* violation and whether there was bad faith on the part of the police as required for a due process violation based on the failure to preserve evidence.

19

view the evidence in the light most favorable to the Government, resolving any conflicts in favor of its case. *United States v. Frank*, 599 F.3d 1221, 1233 (11th Cir. 2010). Whether the evidence is direct or only circumstantial, we accept all reasonable inferences that tend to support the Government's case. *United States v. Williams*, 390 F.3d 1319, 1324 (11th Cir. 2004). Where the Government relies on circumstantial evidence, reasonable inferences—rather than mere speculation— must support the conviction. *United States v. Capers*, 708 F.3d 1286, 1297 (11th Cir. 2013).

To sustain a conviction of aggravated identity theft, the Government must show that a defendant, in relation to certain felonies, "knowingly transfer[red], possesse[d], or use[d], without lawful authority, a means of identification of another person . . . ." 18 U.S.C. § 1028A(a)(1). For the purposes of § 1028A, "means of identification" is defined to include any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual. *Id.* § 1028(d)(7). Under the plain language of the statute, the Government did not have to prove that Defendant both possessed and used J.P.'s identity without lawful authority.[7] Instead, the Government could obtain a conviction by showing that Defendant either possessed or used J.P.'s identity without lawful authority. *See United States v. Simpson*, 228 F.3d 1294, 1300 (11th

---

[7] At the time of his arrest, Defendant had yet to use J.P.'s identifying information to file a tax return.

20

Cir. 2000) ("where an indictment charges in the conjunctive several means of violating a statute, a conviction may be obtained on proof of only one of the means"); *see also* 18 U.S.C. § 1028A(a)(1).

The evidence was more than sufficient to sustain the challenged aggravated identity theft conviction. While J.P did not testify, the Government presented circumstantial evidence at trial from which the jury could reasonably infer that J.P did not authorize Defendant to possess his personal information. *See Capers*, 708 F.3d at 1297. A printout from the Mt. Sinai computer database with J.P's name, date of birth, and social security number was found by the desk area in the foyer of Defendant's home. This information would have been entered in the hospital's computer database by a patient access representative when J.P. registered for treatment. Even though Defendant had temporarily worked at Mt. Sinai, he had no work-related reason to print out patient information or take such printouts from the hospital office. Furthermore, Defendant was informed, through ethics training at the start of his employment, that patient information was confidential, employees were prohibited by the code of conduct from taking home any information or providing information to third parties, and medical center files could not be removed or distributed to anyone unless authorized.

In light of the above evidence, we are satisfied that the jury could reasonably infer that J.P. gave his personal identifying information to a Mt. Sinai employee

upon his admission to the hospital and did not authorize Defendant to possess his name, date of birth, and social security number by printing such information from the hospital database and taking it home.

### III.  Conclusion

For the reasons stated above, Defendant's conviction is **AFFIRMED.**